UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIDGET ERICKSON, et al., <br><br>    Plaintiffs, <br><br>v. <br><br>KIMBERLY-CLARK CORPORATION, <br><br>    Defendant. | Case No. 24-cv-07032-AMO <br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br>Re: Dkt. No. 19 |

Plaintiffs bring this putative class action on behalf of a nationwide and California state class, alleging Defendant's Huggies-brand baby wipes fail to disclose they contain per- and polyfluoroalkyl substances ("PFAS"). Plaintiffs assert five causes of action: 1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; 2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; 3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; 4) breach of express warranty; and 5) unjust enrichment. Defendant moves to dismiss the First Amended Complaint ("FAC") (ECF 16)[1] in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument. Having reviewed the parties' submissions, and the relevant legal authority, the Court **GRANTS** the motion to dismiss, with leave to amend.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

# FACTUAL ALLEGATIONS[2]

Plaintiff Bridget Erickson purchased Huggies Simply Clean Fragrance Free Baby Wipes in May and July of 2023 as well as in April 2024. (ECF 16 ¶ 6.) Plaintiff Erica Stevenson also purchased Defendant's baby wipes in February and April of 2024. (*Id*. ¶ 8.) Both Plaintiffs reviewed the product's packaging prior to purchase and relied on the representations made therein. (*Id*. ¶¶ 6, 8.) Throughout the product packaging, Defendant markets the baby wipes as "simply clean," and further indicates the product is "Hypoallergenic," "Dermatologically Tested," "Alcohol Free," and "Paraben Free." (*Id*. ¶ 14.)



---

[2] This section comprises the well-pleaded allegations from the FAC, which are taken as true and viewed in the light most favorable to Plaintiffs for the purpose of the instant motion. *See Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008).

2



The packaging also notes the product is formulated with "gentle ingredients," and on Defendant's product page, there are various depictions of the product being used on the skin of babies. (*Id.* ¶¶ 15-17.)

This product page also describes the wipes as "plant-based" with an asterisk noting it is "70% + by weight." (*Id.* ¶¶ 18-19.)



3

1    In March 2024, Plaintiffs' counsel requested testing of the product, "utilizing a Department
2  of Defense ELAP-certified laboratory." (*Id*. ¶ 4.) A randomly selected sample, "representative of
3  the Huggies Simply Clean Fragrance Free Baby Wipe Product line," was tested using the
4  Environmental Protection Agency's 537 testing method, and the lab found PFAS in the baby
5  wipes in an amount of 305 parts per trillion. (*Id*.) PFAS "are man-made chemicals that have been
6  used in industry and consumer products worldwide since the 1940s. They have been used to make
7  nonstick cookware, water-repellent clothing, stain resistant fabrics and carpets, some cosmetics,
8  some firefighting foams, and products that resist grease, water, and oil." (*Id*. ¶ 24.) These
9  substances can be toxic and "[t]he EPA has set the health advisory level for PFOA at .004 parts
10 per trillion and for PFOS at .02 parts per trillion, an indication that some negative health effects
11 may occur within concentration of PFOA or PFOS in water that are near zero." (*Id*. ¶ 25 (internal
12 quotations omitted).) PFAS have also been linked to severe, negative health outcomes such as
13 "cancer and effects on lipid metabolism" as well as "immune suppression, thyroid disease, and
14 harm to reproduction." (*Id*. ¶ 27.) Plaintiffs further incorporate various scientific research
15 highlighting the unique vulnerability of infants to harmful chemicals. (*Id*. ¶¶ 30-32.)

16    Plaintiffs find Defendant's advertising misleading because it omitted and concealed that
17 the product contained "dangerous levels of PFAS," which could cause serious health
18 repercussions. (*Id*. ¶ 43.) The representations on the packaging therefore deceive reasonable
19 consumers, and had Plaintiffs known of the PFAS content, they would not have paid as much for
20 the product. (*Id*. ¶ 48.)

**LEGAL STANDARD**

22    "To survive a motion to dismiss for failure to state a claim after the Supreme Court's
23 decisions in *Iqbal* and *Twombly*, plaintiffs' allegations must suggest that their claim has at least a
24 plausible chance of success." *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1134-35 (9th Cir. 2014) (cleaned
25 up). The district court must assume that the plaintiff's allegations are true and draw all reasonable
26 inferences in their favor. *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1220 (9th Cir. 2022).
27 However, the court need not construe conclusory statements or unreasonable inferences as true.
28 *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).

4

1    Further, since Plaintiffs assert claims sounding in fraud, the FAC must comply with the
2    heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *Davidson v. Sprout Foods,*
3    *Inc.*, 106 F.4th 842, 852 (9th Cir. 2024).  To comply with this standard, "the complaint must
4    'identify the who, what, when, where, and how of the misconduct charged, as well as what is false
5    or misleading about the purportedly fraudulent statement, and why it is false.'"  *Id*. (quoting
6    *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 964 (9th Cir. 2018)).

**DISCUSSION**

**I.   REQUEST FOR JUDICIAL NOTICE**

Defendant requests judicial notice of six documents.  (ECF 19-1.)  Plaintiffs do not oppose.  These documents include certain articles already incorporated by reference into the FAC as well as documents sourced from the EPA and FDA websites.  (*Id*. at 3.)

Pursuant to Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts often take judicial notice of "matters of public record" and court filings.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006).  The Court may also take judicial notice of the content of government websites.  *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

For those documents already cited within the FAC, the Court considers them incorporated by reference.  As to the remaining exhibits attached to Defendant's request, such as the articles from the EPA and FDA websites, the request for judicial notice is **GRANTED**.

**II.  FRAUD CLAIMS**

Plaintiffs assert the Defendant's representations on the Huggies-brand baby wipes' packaging, as well the omission of any information regarding PFAS content, violated the CLRA, FAL, and the UCL's fraudulent prong.  California's UCL "prohibits any 'unlawful, unfair or fraudulent business act or practice.'  The false advertising law prohibits any 'unfair, deceptive, untrue, or misleading advertising.'"  *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008) (internal citations omitted).  Additionally, the CLRA "prohibits 'unfair methods of

1    competition and unfair or deceptive acts or practices.'" *Id*. (citation omitted).  All three statutes
2    are governed by the "reasonable consumer test," whereby the plaintiff "must show that members
3    of the public are likely to be deceived." *Id*. (internal quotations omitted).  "Because the same
4    standard for fraudulent activity governs all three statutes, courts often analyze the three statutes
5    together." *In re Plum Baby Food Litig.*, No. 4:21-CV-00913-YGR, 2024 WL 1354447, at *4
6    (N.D. Cal. Mar. 28, 2024), *aff'd*, No. 24-2766, 2025 WL 1200700 (9th Cir. Apr. 25, 2025); *see
7    also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (analyzing California consumer
8    protection statutes together since they share the same "reasonable consumer" test).  "[I]n federal
9    court, dismissals of UCL, FAL, and CLRA claims at the pleadings stage have 'occasionally been
10   upheld,' but such cases are 'rare.' Dismissal is appropriate when 'the advertisement itself [makes]
11   it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived.'"
12   *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) (internal citations omitted)
13   (alterations in original).
14   　　　The parties do not present individualized arguments unique to the CLRA, FAL or the UCL
15   fraudulent prong, so the Court proceeds by analyzing the three claims under the same standard.
16   Here, Plaintiffs advance two theories of alleged deception by Defendant—misrepresentation and
17   omission.  The Court considers Defendant's challenge to each in turn.

   **A.     Misrepresentation Theory**

19   　　　Under the reasonable consumer test, "[w]hether an advertisement is misleading is
20   determined by asking whether a reasonable consumer would likely be deceived." *Hodsdon v.
21   Mars, Inc.*, 891 F.3d 857, 867-68 (9th Cir. 2018).  Plaintiffs assert two kinds of misrepresentation
22   present on the Huggies-brand baby wipes' packaging: 1) Defendant advertises the product as
23   "plant-based," which reasonable consumers would assume means free of PFAS, since such
24   chemicals are "non-natural" (ECF 25 at 17-18); and 2) Defendant's combination of representations
25   that the baby wipes are "gentle," "simply clean," "hypo-allergenic," "dermatologically tested,"
26   "alcohol free, " and "paraben free," would lead a reasonable consumer to believe the product is
27   "free of harmful toxins like PFAS chemicals" (*id*. at 19).  On the current allegations, neither claim
28   can advance.

6

1    As to the first alleged misrepresentation, Plaintiffs focus on the term "plant-based," but
2 ignore the remainder of the statement on the packaging, which includes a prominent asterisk that
3 notes the product is "70% +" plant-based by weight. (ECF 16 ¶ 18.) This disposes of the notion
4 that a reasonable consumer could plausibly think the wipes contained zero "non-natural"
5 ingredients. Though Plaintiffs rely on *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771 (9th Cir.
6 2024), to support their position—it does the opposite. The *Whiteside* court held that a product
7 which was advertised as "plant-based," but included synthetic ingredients, was not misleading
8 because it featured a prominent asterisk on the packaging, noting it was "70% + by weight." *Id*. at
9 785. Moreover, other courts have recognized that reasonable consumers do not conflate similar
10 representations such as "natural" or "filtered" with a complete absence of chemicals. *See, e.g.*,
11 *Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 772 (N.D. Cal. 2024) (noting the term
12 "filtered water" did not indicate the sports drink was completely free of any incidental impurities
13 or chemicals); *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-CV-06664-BLF, 2020 WL
14 5910071, at *5 (N.D. Cal. Oct. 6, 2020) (reviewing analogous cases to determine use of the word
15 "natural" was not deceptive when the product included trace amounts of pesticides). So, Plaintiffs
16 have not plausibly alleged the term "plant-based" misleads consumers into thinking the product is
17 free from trace amounts of PFAS.
18    Regarding the second alleged misrepresentation, the statements on the package—when
19 considered together—plausibly suggest to a reasonable consumer that the product is free from
20 harmful or toxic ingredients. *See Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 889
21 (N.D. Cal. 2016) ("The California statutes [the plaintiff] invokes recognize claims even where
22 representations may not be misleading in isolation, but are deceptive when considering the
23 package and advertisement as a whole." (citing *Williams*, 552 F.3d at 939 n. 3)). However,
24 Plaintiffs' theory of misrepresentation only survives if the amount of PFAS present in the baby
25 wipes is harmful or toxic, thus contradicting the label. On this point, Plaintiffs have not met their
26 pleading burden under Rule 9(b).
27    Plaintiffs allege the randomly selected, representative sample of "Huggies Simply Clean
28 Fragrance Free Baby Wipes," tested by a Department of Defense ELAP-certified laboratory, found

PFAS present in the amount of 305 parts per trillion. (ECF 16 ¶ 4.) They further allege PFAS are toxic "at doses as low as parts per trillion or quadrillion," and that the Environmental Protection Agency has set levels of exposure "for PFOA at .004 parts per trillion, and for PFOS at .02 parts per trillion." (*Id*. ¶¶ 24-25.) But Plaintiffs have not alleged any facts to permit a reasonable inference that these levels indicate toxicity in a product like baby wipes. The documents cited by Plaintiffs at paragraphs 24 and 25 of the FAC state these levels were set by the EPA for drinking water and refer to specific subsets of PFAS—namely PFOS and PFOA. (*Id*. ¶ 24 n.16, ¶ 25 n.17.)[3] Plaintiffs do not allege the presence of PFOS or PFOA in the tested baby wipes, and they offer no basis for asserting these levels apply to a completely different product, which is used on the skin rather than consumed. Though the FAC provides various reasons why infants are more susceptible to chemicals (*id*. ¶¶ 30-35), it does not plausibly allege the levels found in the wipes are harmful, even if infants are uniquely vulnerable to dermal transmission of toxins. To assert Defendant misled reasonable consumers into believing the product did not contain harmful substances, Plaintiffs must allege—plausibly and with specificity—that the product could cause harm. They have not yet done so.

### B.  Omission Theory

Fraud based on omission requires either that the omission was "contrary to a representation

---

[3] The Court may consider unattached evidence on which a complaint necessarily relies if the complaint refers to the document, the document is central to the plaintiff's claim, and no party questions the authenticity of the document. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). Neither party questions the authenticity of the articles cited in the FAC, and they are central to Plaintiffs' cause of action, so the Court considers them incorporated by reference.

Turning to the substance of the cited documents: the article referenced at footnote 16 of the FAC does not cite directly to a study for the claim that "PFAS are extremely toxic at doses as low as parts per trillion or quadrillion." *See* Jeffrey Kluger, *All The Stuff In Your Home That Might Contain PFAS 'Forever Chemicals*, Time (May 19, 2023), https://time.com/6281242/pfas-forever-chemicals-home-beauty-bodyproducts/. Rather, it relies on a quote from Erik Olson, senior strategic director for the Natural Resources Defense Council. *Id*. From the context provided by other sources cited in the FAC, it is clear Olson is relying on the EPA's guidance as to levels of PFOA and PFOS in drinking water. *See, e.g*., Kevin Loria, *EPA Says Even Extremely Low Levels of PFAS in Drinking Water May Be Unsafe*, Consumer Reports (June 15, 2022), https://www.consumerreports.org/water-quality/evenextremely-
low-levels-of-pfas-in-drinking-water-unsafea1147585461/#:~:
text=They're%20found%20in%20nonstick,PFAS%20exposure%20for%20many
%20people.

actually made by the defendant," or "the defendant was obliged to disclose" the information. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). Plaintiffs argue omission claims based on both theories, namely that Defendant's omission of the PFAS content in the baby wipes was contrary to its representations, and separately, it was obligated to disclose that information. (ECF 25 at 21-25.) Plaintiffs do not allege the wipes were labeled "PFAS-free," and for the reasons stated in the Court's analysis of the misrepresentation claims, the presence of PFAS is not contrary to labeling that the wipes are "plant-based" or "gentle." *See* Part I.A., *supra*. Therefore, Plaintiffs have not plausibly stated an omission claim "contrary to a representation actually made by the defendant." *Hodsdon*, 891 F.3d at 861.

Turning to the second theory of omission, "a defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, central to the product's function, and the plaintiff alleges one of the four *LiMandri* factors." *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1169 (S.D. Cal. 2024) (cleaned up). Plaintiffs do not argue the defect posed an unreasonable safety hazard; rather, they assert Defendant was obligated to disclose the PFAS content because it is material, central to the baby wipes' function, and one of the four *LiMandri* factors is present. (ECF 25 at 23-25.) However, Plaintiffs have failed to plausibly allege the presence of PFAS in the wipes affects their central functionality.

A defect goes to the central functionality of a product when it "prevent[s] the product from 'performing a critical or integral function,' or render[s] the product 'incapable of use.'" *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1086 (N.D. Cal. 2022) (citing *Knowles v. ARRIS Int'l PLC*, 847 F. App'x 512, 513-14 (9th Cir. 2021), and *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 567 (9th Cir. 2019)). "[T]he central functionality of the product is not based on subjective preferences about a product," but rather the effect on a core function of the product. *Hodsdon*, 891 F.3d 857, 864 (9th Cir. 2018) (noting examples of central functionality such as "[a] computer chip that corrupts the hard drive, or a laptop screen that goes dark"). Since Plaintiffs do not plausibly allege the presence of PFAS prevents the use of the baby wipes or inhibits their cleaning function, the claim cannot advance.

1    To counter, Plaintiffs contend that "a defect relating to a product's central function will not
2    always render the product incapable of use." (ECF 25 at 24 (quoting *Bettles v. Toyota Motor
3    Corp.*, 2022 WL 1619337, at *4 (C.D. Cal. May 23, 2022)). Here, the Court disagrees. The
4    *Bettles* opinion did not cite any authority for that assertion, but regardless, the statement of law
5    does not ultimately cut in Plaintiffs' favor. Even if the alleged defect need not render a product
6    completely incapable of use, it must go to the central function. *See Hammerling*, 615 F. Supp. 3d
7    at 1086. Plaintiffs only argue the presence of PFAS poses a risk to infants because of repeated
8    exposure and their inherent susceptibility to chemicals. (ECF 25 at 24.) But concerns about a
9    product's safety differ from effects on its central function, and indeed comprise a separate theory
10   of omission, i.e. the "unreasonable safety hazard" theory. *See Trader Joe's*, 726 F. Supp. 3d at
11   1169. But that is not the theory Plaintiffs have advanced, and even if it were, the Court's analysis
12   of the misrepresentation claims explains why the Plaintiffs have not plausibly alleged the PFAS
13   levels in the wipes were harmful.

\* \* \*

15   For these reasons, the Court **GRANTS** Defendant's motion to dismiss the CLRA, FAL,
16   and UCL fraudulent-prong claims.

### III.    UNFAIR COMPETITION LAW

Plaintiffs further assert claims under the UCL's unlawful and unfair prongs. The unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). "Accordingly, to state a claim under the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate violation." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1097 (N.D. Cal. 2014); *see also People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal.App.4th 508, 128 Cal.Rptr.2d 463 (2002) ("[V]irtually any state, federal or local law can serve as the predicate for an action under section 17200."). Since the Court has dismissed the FAL, CLRA, and UCL fraudulent-prong claims, there is no remaining basis for a UCL unlawful-prong claim.

To invoke the unfair prong, a plaintiff must plausibly allege her "injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumer[] [herself] could reasonably have avoided." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 839 (2006), *as modified* (Nov. 8, 2006). Separately, the Ninth Circuit has articulated three more specific theories of unfair practice: "(1) whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law,'; (2) whether the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,'; or (3) whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer.'" *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020). Here, Plaintiffs have not alleged a separate basis for an unfair-prong claim beyond the allegations of misleading advertisement. To the extent Plaintiffs allege Defendant's "conduct is substantially injurious to consumers, offends public policy, and is immoral unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits," such statements are conclusory. (ECF 16 ¶ 82.) Plaintiffs must allege facts to support their theory of unfair conduct if it differs from the alleged false advertising.

Accordingly, the Court **GRANTS** the motion to dismiss the remaining claims under the UCL's unlawful and unfair prongs.

## IV. BREACH OF EXPRESS WARRANTY

Next, Plaintiffs allege Defendant's failure to disclose the presence of PFAS in the baby wipes breached an express warranty that the product was "free of toxic chemicals." (ECF 1 ¶ 99; ECF 25 at 29.) Though Plaintiffs do not state the statutory basis for their cause of action, from their citations, it appears they rely on the California Uniform Commercial Code § 2313. (*See* ECF 25 at 29 (citing *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-CV-00413-TSH, 2021 WL 1788397, at *11 (N.D. Cal. May 5, 2021), which relies on *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010))). Section 2313 provides the following:

11

> (1) Express warranties by the seller are created as follows:
>> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Cal. Com. Code § 2313.  Plaintiffs must therefore allege: "(1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." *Weinstat*, 180 Cal. App. 4th at 1227 (citation omitted) (cleaned up).  Assuming, *arguendo*, Defendant's packaging constitutes an "affirmation of fact or promise" or a "description of the goods," Plaintiffs' claim still cannot advance.  Plaintiffs have failed to plausibly allege the baby wipes contain PFAS at levels that would be toxic to infants, and so the FAC fails to state a breach of an express warranty that the wipes are non-toxic.

Consequently, the Court **GRANTS** to motion to dismiss the breach of express warranty claim.

**V.     UNJUST ENRICHMENT**

The factual basis for Plaintiffs' unjust enrichment claim is the same as the fraud-based claims, namely that Defendant misrepresented its product as being free from toxic chemicals, like PFAS.  (ECF 16 ¶ 114.)  Since Plaintiffs fail to plausibly allege any wrongful conduct as to the advertising of Defendant's product, there is no basis for an unjust enrichment claim.  *See, e.g., Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal.App.4th 1544, 1557 (2007) (holding unjust enrichment claim based on the same facts that failed to state a UCL claim must also fail).  Therefore, the Court **GRANTS** the motion to dismiss the unjust enrichment claim.

**CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss the First Amended Complaint, with leave to amend all claims. Should Plaintiffs choose to amend, the Second Amended Complaint must be filed within 21 days of this Order. Having found the motion appropriate for determination on the papers, the Court **VACATES** the July 31, 2025 hearing. *See* Fed. R. Civ. P. 78; Civ. L.R. 7-1(b).

This Order disposes of Docket No. 19.

**IT IS SO ORDERED.**

Dated: July 28, 2025

                                                                                                                _____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

13